# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: February 4, 2019

```
* * * * * * * * * * * * * *
STACEY JAMES-CORNELIUS,            *   No. 17-1616V
on behalf of her minor child, E.J.,*
                                   *   Special Master Sanders
            Petitioner,            *
                                   *
v.                                 *
                                   *
SECRETARY OF HEALTH                *   Decision; Attorneys' Fees and Costs;
AND HUMAN SERVICES,                *   Lack of Reasonable Basis.
                                   *
            Respondent.            *
* * * * * * * * * * * * * *
```

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.
*Amy P. Kokot*, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 27, 2017, Stacey James-Cornelius ("Petitioner") filed a petition on behalf of her minor child, E.J., seeking compensation under the National Vaccine Injury Compensation Program. 42 U.S.C. § 300aa–10 to 34 (2012)[2] (the "Vaccine Act" or "Program"). Pet., ECF No. 1. Petitioner alleged that E.J. suffered autonomic nervous system dysfunction as a result of the three human papillomavirus ("HPV") vaccinations he received on October 30, 2014, December 23, 2014, and May 27, 2015. *Id.*; *see also* Pet'r's Mot. for Dec. Dism. Pet. at 1, ECF No. 12. After submitting medical records, Petitioner filed a motion to dismiss the case on February 9, 2018. ECF No. 12. The undersigned issued a decision dismissing Petitioner's claim on February 9, 2018. ECF No. 13.

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the Internet.** As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be withheld from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99–660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Although Petitioner did not receive compensation, she is requesting an award of attorneys' fees and costs as permitted by the Vaccine Act. 42 U.S.C. § 300aa–15(e). In her motion, Petitioner requested reimbursement of attorneys' fees and costs in the total amount of $14,668.60 (representing $13,664.00 in attorneys' fees and $1,004.60 for costs incurred). Pet'r's Mot. for Att'ys' Fees & Costs ("AFC") at 1, ECF No. 14. Respondent contested the appropriateness of any fees award and stated that "[P]etitioner produced no objective evidence to support her allegations[.]" Resp't's Response at 10–11, ECF No. 19. In her reply, Petitioner argued that despite a lack of medical records supporting E.J.'s symptom onset, "sworn testimony from witnesses can serve as objective support for reasonable basis[]" in this case. Pet'r's Reply at 2–3, ECF No. 20. On April 26, 2018, Petitioner filed a supplemental brief amending the amount in attorneys' fees and costs requested, totaling $17,111.12.[3] ECF No. 21.

The matter is now ripe for disposition. For the reasons stated below, the undersigned finds that Petitioner has not established that there was a reasonable basis for her claim. Therefore, Petitioner's motion for attorneys' fees and costs is hereby **DENIED**.

**I.      Billing Record and Procedural History**

According to the billing record submitted with the fees request, Petitioner's counsel and his associates began working on this case on January 3, 2017. *See* Pet'r's Mot. for AFC, Ex. A at 6, ECF No. 14-1. They began to request medical records from various healthcare providers immediately thereafter, and they started to review medical records as early as February 22, 2017. *See, e.g., id.* at 1–9. The billing record demonstrates that over the next eight months, counsel and his associates conducted various tasks related to case preparation, including requesting and reviewing medical records. They also participated in telephone conferences with Petitioner to discuss "missing medical records." *Id.* During one such conference, counsel specifically discussed the "need [for] those records to fill in gaps as to what happened." *Id.* at 2. That conference took place on September 26, 2017, just one month prior to the date on which the petition was filed. Based on the undersigned's review of the billing record, it appears that counsel and his associates completed approximately 15 hours of work pertaining to record review during the period between February and October 2017. *See id.* at 1–13.

There is additional evidence in the billing record that reveals the concern Petitioner's counsel had about missing medical records and their effect on the case. For instance, on April 21, 2017, counsel noted that he had sent Petitioner a "follow-up email requesting that she recheck the list of providers she forwarded to [them] to insure that she identified all seen." *Id.* at 5. Three days later, counsel noted that he had received a "telephone call from [Petitioner] to discuss the situation regarding the medical records [they had] received from Pediatrics at Brookstone and other issues[.]" *Id.* On August 17, 2017, counsel noted that he had a "[c]all with Wellstar re: missing encounter visits . . . ." *Id.* at 2. On September 22, 2017—just over one month prior to filing the petition—counsel noted that he had an "[e]xtended conversation with [Petitioner] re: missing records; vaccine causation; [and] timing of filing with [the] October

---

[3] The request for attorneys' fees totaled $17,058.60, while the request for attorneys' costs totaled $1,057.12. *See* Pet'r's Mot. for AFC, Ex. B, ECF No. 21-1.

vaccination date approaching." *Id.*  Four days later, counsel noted that he had another "[c]all with [Petitioner] re: missing medical records [and the] burden of proof in [the] Program . . . ." *Id.*  In fact, counsel reiterated this concern to Petitioner multiple times over a period of six months prior to filing the petition.

Petitioner filed the petition together with her and E.J.'s affidavits on October 27, 2017. ECF No. 1.  Petitioner also filed some medical records on November 2, 2017.  ECF No. 8.  On December 11, 2017, Petitioner filed a status report requesting a 30-day extension to file outstanding missing medical records, ECF No. 9, which the undersigned granted.  Non-PDF Order, docketed Dec. 11, 2017.  On January 5, 2018, Petitioner filed medical records from Pediatrics at Brookstone.  ECF No. 10.  On January 11, 2018, Petitioner filed a Motion for Extension of Time to file all outstanding medical records, ECF No. 11, which the undersigned granted.  Non-PDF Order, docketed Jan. 12, 2018.  On February 9, 2018, however, Petitioner filed a Motion for a Decision Dismissing her Petition on the grounds that "an investigation of the facts ha[d] demonstrated to Petitioner that she [would] likely be unable to prove that she [was] entitled to compensation in the Vaccine Program."  Pet'r's Mot. for Dec. Dism. Pet. at 1, ECF No. 12.  Additional entries in the billing record also show counsel's work on the matter following Petitioner's dismissal request and the undersigned's issuance of a Decision thereafter.  *See* Pet'r's Mot. for AFC, Ex. A at 3, ECF No. 14-1.

On February 28, 2018, Petitioner filed a Motion for Attorneys' Fees and Costs.  ECF No. 14.  In her motion, Petitioner argued that she acted in good faith in filing her petition because she "has a subjective belief that vaccination caused E.J.'s injuries."  *Id.* at 2.  Petitioner also maintained that despite the lack of medical records, which was owed to the "dissol[ution] and reform[ation] into new entities" of some of the medical providers, Petitioner's and E.J.'s affidavits together with the records already submitted are sufficient to determine reasonable basis for her vaccine claim.  *Id.* at 2–4.  Finally, Petitioner explained that she filed the petition without the missing records she "worked diligently" to obtain "[i]n order to preserve the statute of limitations[.]"  *Id.* at 3.

Respondent responded to the fees motion on April 12, 2018, and contested Petitioner's entitlement to a fee award on reasonable basis grounds.  *See* Resp't's Response, ECF No. 19.  In his response, Respondent argued that "[t]o have a 'reasonable basis,' a claim must, at minimum, be supported by medical records or medical opinion."  *Id.* at 6 (quoting *Everett v. Sec'y of Health & Human Servs.*, No 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992)).  Respondent argued that given E.J.'s treating physicians' assessment that "his ongoing symptoms, which began in April 2015, were [likely] due to mononucleosis," the present matter lacks objective evidence supporting both E.J.'s alleged injury and the overall contention that the HPV vaccines caused the symptoms he experienced.  *Id.* at 8.  Additionally, Respondent stated that under *Simmons*, Petitioner's justification for filing her petition "to preserve the statute of limitations" does not alone establish a reasonable basis.  *Id.* at 9 (citing *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017)).

3

Petitioner filed a Reply to Respondent's Response on April 19, 2018. Pet'r's Reply, ECF No. 20. In her reply, Petitioner reiterated that based on the two sworn affidavits provided by herself and E.J., Petitioner's counsel "had no reason to doubt [Petitioner's] assertion that records existed between the first and second HPV vaccination to substantiate E.J.'s autonomic dysfunction beginning at that time, and well before E.J.'s diagnosis of mono[nucleosis]." *Id.* at 2. Regarding the statute of limitations, Petitioner argued that *Simmons* "'does not expressly (or even impliedly) abrogate the 'totality of the circumstances' test,'" but rather "'emphasizes the need for petitioners to locate objective proof supporting a claim—an inquiry that can take time, as recognized in other decisions observing that claims can possess reasonable basis but then 'lose' it later after additional facts are adduced.'" *Id.* at 1–2 (quoting *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, 2018 WL 1125853, *5 (Fed. Cl Spec. Mstr. Jan. 5, 2018)). Thus, Petitioner averred that based on the affidavits supporting her claim and the medical records already submitted, reasonable basis existed at the time Petitioner filed her petition. *Id.*

## II.     Summary of Relevant Medical Facts

E.J. was born on February 10, 2000, and he was a high school freshman when he received his first HPV vaccination on October 30, 2014. Pet'r's Ex. 3, ECF No. 8-3. He felt sick the next day, but thought it was a cold, which he treated with over-the-counter medication. Pet. at 2, ECF No. 1.

E.J. received his second HPV vaccination on December 23, 2014. Pet'r's Ex. 3. The next day, E.J. was seen by a nurse practitioner at WMG Pediatrics at Brookstone for worsening cough that had "started in the past 7 days." Pet'r's Ex. 10 at 10, ECF No. 10-1. E.J was diagnosed with sinusitis and a cough and was treated with Prednisone and Amoxicillin-Clavulanate. *Id.* at 11. At that time, the plan was to call the clinic "[i]f symptoms persist[ed] or worsen[ed]." *Id.* There were no follow-up records filed.

Approximately four months later, on April 23, 2015, E.J. was seen by Dr. Akpomudiare Otuguor at Peachtree Immediate Care for fever, sore throat, and headache that had "started 5 days" previously and which E.J. had been treating with "Tylenol/Motrin." Pet'r's Ex. 6 at 1, ECF No. 8-6. Dr. Otuguor diagnosed E.J. with acute pharyngitis and fever and prescribed Tylenol and Motrin. *Id.* at 2. On April 27, 2015, E.J. was taken to Peachtree Immediate Care for a nine-day history of sore throat and headaches. *Id.* at 6. At that time, E.J. was diagnosed with mononucleosis. *Id.* E.J. returned to Peachtree Immediate Care for a follow-up on April 29, 2015, and was seen by Dr. Syed Baber. *Id.* at 10. Dr. Baber noted that E.J. had "had lower fever [the previous] night" and diagnosed him with mononucleosis and fever. *Id.* On May 2, 2015, E.J. went back to Peachtree Immediate Care for a follow-up and was seen by Dr. Edd Thomas. *Id.* at 11. Dr. Thomas noted that E.J.'s mononucleosis was in the "recovery phase" and that his "fever seem[ed to have] broken." *Id.* E.J. was allowed to return to school but had to refrain from all aerobic and contact sports and P.E. exertion "until cleared by his doctor." *Id.* at 11–12.

E.J. received his third HPV vaccination on May 27, 2015.  Pet'r's Ex. 3 at 1.  The record is silent as to whether E.J.'s mononucleosis had resolved prior to this vaccination.[4]  On June 18, 2015, E.J. was seen by a nurse practitioner for "abdominal pain, a change in bowel habit, coughing, headaches and a sore throat."  Pet'r's Ex. 10 at 17.  His medical history notes mentioned that his "[s]ibling [was] complaining of sore throat and fever as well."  *Id.*  E.J. was diagnosed with a sore throat, pharyngitis, and bilateral thoracic back pain and was treated with Ibuprofen.  *Id.* at 18–19.

On August 11, 2015, E.J. was evaluated in the emergency room for a one-week history of "headaches, vomiting, diarrhea, back pain, muscle aches and lightheadedness," which "fe[lt] . . . similar to mono[nucleosis]."  Pet'r's Ex. 7 at 4, ECF No. 8-7.  E.J. was diagnosed with malaise and fatigue.  *Id.*  On September 7, 2015, E.J. returned to the emergency room.  *Id.* at 7.  E.J. and Petitioner told the medical staff that since he "was diagnosed with mononucleosis[,] [E.J.] had illnesses almost every week with fevers up to 100.2 [degrees]."  *Id.*  Dr. Lonnie King, attending physician, indicated that E.J.'s symptoms could have been "a manifestation of a prolonged sequela from mononucleosis."  *Id.* at 9.  Laboratory results were "reassuring," and E.J. was discharged on the same day.  *Id.* at 10; *see also* Pet'r's Ex. 10 at 24–25, 28–29.

On January 11, 2016,[5] E.J. was seen by his "old doctor[,] [Dr. Kyoung-Soon Kim, who] had started a private practice[,]" for fever, back pain, leg pain, nausea, vomiting, and diarrhea.  Pet'r's Ex. 1 at 4, ECF No. 1-1; Pet'r's Ex. 4 at 1, ECF No. 8-4.  Dr. Kim noted that E.J. had become "super sensitive to light" and experienced episodes that felt like his "heart was skipping."  Pet'r's Ex. 4 at 1.  He also wrote that Petitioner associated the HPV vaccines "with the onset of [E.J.'s] chronic problems."  *Id.*  A magnetic resonance imaging ("MRI") of E.J.'s brain was normal, as was an MRI of his lumbar spine.  *Id.* at 8–9.  On January 22, 2016, E.J. was seen by Dr. Christopher Petit, cardiologist, for syncope.  Pet'r's Ex. 8 at 8–9, ECF No. 8-8; Pet'r's Ex. 9 at 26–27, ECF No. 8-9.  E.J. reported that his first episode of syncope had occurred more than six months ago, while the most recent episode had occurred within the previous week.  *Id.*  The symptoms occurred during or immediately after exercise, and they "ha[d] all followed a prolonged bout of [m]ononucleosis, which [had] left [E.J.] with significant fatigue."  *Id.*  Dr. Petit's summary refers to a previous tentative diagnosis of postural orthostatic tachycardia syndrome ("POTS")[6] and mentions that E.J. continued to experience "tunnel-vision and presyncope symptoms."  *Id.*  Dr. Petit's impression after his examination of E.J. was "syncope, neurocardiogenic ("POTS")."  *Id.*

E.J. was again evaluated in the emergency room on February 3, 2016, due to vomiting.  Pet'r's Ex. 9 at 81.  His medical history showed that he had been suffering from fatigue, lower back pain, occasional syncope, and intermittent vomiting for at least four months, with the symptoms having initially started following his diagnosis of mononucleosis and the administration of the HPV vaccines.  *Id.*  E.J.'s laboratory results were unremarkable, and he was

---

[4] The record is also silent as to whether E.J. experienced cough and/or fever shortly after receiving the third HPV vaccination.
[5] There are no medical records between E.J.'s September 7, 2015 visit and January 11, 2016 visit.
[6] Except for E.J.'s affidavit which notes that "Dr. Kim mentioned a disease called POTS and that it could be a possibility," Pet'r's Ex. 1 at 4, no medical records submitted reference POTS prior to Dr. Petit's assessment of E.J.

5

discharged on the same day.  *Id.* at 83–84.  On February 9, 2016, E.J. was seen by Dr. Peter Fischbach, cardiologist, for "syncope and question of POTS."  *Id.* at 45.  A "head up tilt table test" was performed which yielded a normal response.  *See id.* at 45, 48–49.  E.J. was diagnosed with "syncope, likely neurocardiogenic."  *Id.* at 46, 48.

On April 18, 2016, E.J. had a follow-up visit with Dr. Fischbach for dysautonomia.  Pet'r's Ex. 8 at 1.  The summary notes that the results of E.J.'s head up tilt table test performed on February 9, 2016, were unremarkable and that "based on [E.J.'s] . . . history and physical examination (in addition to the tilt table test)[,] the diagnosis of dysautonomia was made."  *Id.*  There is no indication in E.J.'s medical records when he was diagnosed with dysautonomia.  It is therefore unclear whether this is Dr. Fischbach's diagnosis or whether he adopted a prior diagnosis.  E.J.'s complaints in April included intermittent vomiting, diarrhea, and fatigue, which left him unable to attend school full-time.  *Id.* at 1–2.  Dr. Fischbach's diagnosis following his examination of E.J. was dysautonomia with "[l]imited school attendance" and "[r]ecent worsening abdominal symptoms."  *Id.* at 2.

## III. Analysis

### A. Relevant Legal Standards

#### a. Good Faith

Under the Vaccine Act, a special master may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa–15(e)(1); *see also Sebelius v. Cloer*, 569 U.S. 369, 376 (2013).  "Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  Petitioners act in "good faith" if they hold an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are "entitled to a presumption of good faith."  *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (noting that in the absence of evidence of bad faith, the special master was justified in presuming the existence of good faith).  Respondent does not contest that the petition was filed in good faith.  *See generally* Resp't's Response, ECF No. 19.  Moreover, there is no evidence that this petition was brought in bad faith.  Therefore, the undersigned finds that the good faith requirement is met.

#### b. Reasonable Basis

By contrast, Respondent *does* contest the reasonable basis for this petition.  "Reasonable basis" is not defined in the Vaccine Act or Rules.  In addition, the Federal Circuit has not interpreted "reasonable basis" or provided any guidance as to how petitioners satisfy the reasonable basis standard.  *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 285 (2014) (citing *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 153 (2012)).  On the other hand, "the Vaccine Act requires that petitions be accompanied with evidence of injury or an explanation as to why records are not available . . . [to] ensure[] that petitioners and their counsel make some effort to establish that there was a vaccination and an injury that may be

6

linked to the vaccine." *Simmons*, 128 Fed. Cl. 579, 583 (2016), *aff'd*, 875 F. 3d 632 (Fed. Cir. 2017).  Deciding whether a claim has a reasonable basis "'is within the discretion of the Special Master[.]'" *Id.* at 582 (internal citations omitted).

In determining reasonable basis, a court looks not at the likelihood of the claim's success, but instead assesses its feasibility based on objective evidence. *Turner*, 2007 WL 4410030, at *6 (citing *Di Roma v. Sec'y of HHS*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  Thus, petitioners must offer more than an unsupported assertion that a vaccine caused the injury alleged.  *See, e.g.*, *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303–04 (2011); *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *5 (Fed. Cl. Spec. Mstr. Mar. 26, 2014).  Petitioners must "affirmatively demonstrate [the] reasonable basis" of their claim through some objective evidentiary showing. *McKellar*, 101 Fed. Cl. at 305.  Such showing "must, at a minimum, be supported by medical records or medical opinion." *Everett*, 1992 WL 35863, at *2.

### c. Statute of Limitations

A "looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition." *Simmons*, 875 F.3d at 636; *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289–90 (2018) (noting that "special masters must not consider subjective factors in determining whether a claim has a reasonable basis" and should "limit[] [their] review to the claim alleged in the petition . . . based on the materials submitted." (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018))).  The court in *Simmons* explained that because the inquiry involved in determining the reasonable basis of a claim is objective, it is "unrelated to counsel's conduct." 875 F.3d at 636.  Petitioners must therefore file evidence of an injury with their petition, which the "special master may consider . . . in determining whether a reasonable basis for the claim exists." *Cottingham on Behalf of K.C. v. Sec'y of Health & Human Servs.*, No. 15-1291V, 2018 WL 6803150, at *3 (Fed. Cl. Dec. 27, 2018).  "[T]he fact that the statute of limitations [may be] about to expire [does] not excuse counsel's obligation to show he had some basis for the claim beyond his conversation with the petitioner[]" before filing the petition. *Simmons*, 875 F.3d at 634 (quoting *Simmons*, 128 Fed. Cl. at 584 (internal citations omitted)).

### B. Petitioner's Claim Lacks Reasonable Basis for a Fees Award

Petitioner's argument that her submitted record provides objective evidence to support her claim is inconsistent with the actual record.  Petitioner had not received all the medical records necessary to establish reasonable basis before she filed the petition.  This is evidenced by counsel's repeated attempts to collect additional records and discuss the Program's burden of proof prior to filing.  The evidence Petitioner submitted could, at most, have established that the vaccinations preceded the onset of the injury.  None of E.J.'s medical providers associated his symptoms with his vaccinations.  On the contrary, E.J.'s treating physicians noted that his ongoing symptoms were likely due to mononucleosis. *See, e.g.*, Pet'r's Ex. 7 at 4, 7, 9, ECF No. 8-7 (stating that E.J.'s complaints "may be a manifestation of a prolonged sequela from

7

mononucleosis"); Pet'r's Ex. 8 at 8 ("[E.J.'s] symptoms have all followed a prolonged bout of [m]ononucleosis which left him with significant fatigue."). A finding of reasonable basis, however, "'requires presenting more than evidence showing only that the vaccine preceded the onset of the injury for which the petitioner seeks compensation.'" *Chuisano*, 116 Fed. Cl. at 287 (quoting *Chuisano v. Sec'y of Health & Human Servs.*, No. 07-452V, 2013 WL 6234660, at *13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013)). In sum, Petitioner's medical records are insufficient to show the claim's feasibility.

Additionally, Petitioner claims that despite "the lack of medical records after the first and second [HPV] shot[s] that would support [E.J.'s] symptom onset," the sworn affidavits provided by Petitioner and E.J. "are evidence relevant to determining whether there is reasonable basis for a vaccine claim" in this case. Pet'r's Mot. for AFC at 3–4, ECF No. 14. It is established in the Program that a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291 (petitioner's affidavit detailing "subjective belief" of vaccine injury did not constitute objective evidence); *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018) (reasonable basis existed where counsel relied *not* on statements made by the petitioner but on "actual objective record proof") (emphasis added). Here, in the absence of medical records supporting the claim alleged in the petition, Petitioner's and E.J.'s affidavits are not alone sufficient to establish reasonable basis.

In the alternative, Petitioner argues that she was compelled to file her petition with incomplete medical records due to time constraints. Specifically, she states that although she "encountered difficulty . . . in obtaining" the missing medical records, she filed the petition on October 27, 2017, "[i]n order to preserve the statute of limitations." Pet'r's Mot. for AFC at 3, ECF No. 14. This argument is two-fold: first, Petitioner is arguing that she did not have enough time to review the record and collect all the necessary evidence prior to filing; second, she is arguing that she filed the petition without said necessary evidence because the statute of limitations would run. Neither argument is supported by the record.

Petitioner argues that under *Simmons*, "the circumstances informing an attorney's investigation of a claim's basis []including the fact that an attorney may have insufficient time to complete that investigation . . . are []relevant." Pet'r's Reply at 1–2, ECF No. 20 (quoting *Amankwaa*, 2018 WL 1125853, at *5). This argument however is not supported by *Simmons*. In *Simmons*, the Federal Circuit held that despite counsel's duty to investigate a claim before filing it, the determination of reasonable basis is unrelated to counsel's conduct. *Simmons*, 875 F.3d at 636. Thus, Petitioner's counsel's performance of due diligence, counsel's reliance on Petitioner's and E.J.'s affidavits, and Petitioner's subjective belief that the HPV vaccines caused the injury alleged have no bearing on whether there was an objective reasonable basis for Petitioner to file her claim. Even if Petitioner's reading of *Simmons* was correct, her argument would still fail because the billing record shows that Petitioner's counsel and his associates had over eight months to investigate the merits of the claim before filing the petition on October 27, 2017. The billing record also reveals that counsel contacted Petitioner on numerous occasions, including one month before filing the petition, to discuss his concerns about missing medical records critical to supporting Petitioner's claim and Petitioner's burden of proof. Thus, the

8

billing record entries cut against the assertion that Petitioner's counsel lacked adequate time for case review.

Furthermore, Petitioner's argument that she filed the petition with an incomplete record because the statute of limitations would run is not a legally recognized justification. Vaccine Program petitioners "can no longer invoke the fact that an attorney was compelled to file the case at the limitations cut-off to excuse an incomplete review of the case's objective basis at that time." *Gmuer v. Sec'y of Health & Human Servs.*, No. 16-1400V, 2018 U.S. Claims LEXIS 1181, at *20 (Fed. Cl. Spec. Mstr. Jul. 26, 2018) (citing *Simmons*, 875 F.3d at 636). As the Federal Circuit explained in *Simmons*, "a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition." 875 F.3d at 636. Because Petitioner lacked sufficient evidence to support her claim, invoking the statute of limitations is not a valid argument.

In sum, the totality of the circumstances reflects that Petitioner's claim lacks reasonable basis. Petitioner did not provide objective evidence to establish the feasibility of her claim. Her counsel had ample time to review her claim and in fact did so, noting necessary missing records prior to filing. Finally, Petitioner's reliance on a statute of limitations deadline belies the facts in her case and does not comport with the Program's established case law.

## IV. Conclusion

For the reasons set forth above, the undersigned finds that Petitioner has failed to establish that there was a reasonable basis for the claim for which the petition was brought. Accordingly, the undersigned finds that an award of attorneys' fees and costs to Petitioner is unreasonable, and her motion is hereby **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[7] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).