# In the United States Court of Federal Claims

No. 17-1616V
Filed Under Seal: July 15, 2019
Reissued for Publication: August 12, 2019[*]

|  |  |
|---|---|
| STACEY JAMES-CORNELIUS, *on behalf of her minor child*, ) ) ) ) Petitioner, ) ) v. ) ) SECRETARY OF HEALTH AND ) HUMAN SERVICES, ) ) Respondent. ) ) | National Childhood Vaccine Injury Act; 42 U.S.C. § 300aa–15(e); Attorneys' Fees and Costs. |

*Andrew D. Downing*, Counsel of Record, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.

*Amy P. Kokot*, Trial Attorney, *Alexis B. Babcock*, Assistant Director, *Catharine E. Reeves*, Deputy Director, *C. Salvatore D'Alessio*, Acting Director, *Joseph H. Hunt*, Assistant Attorney General, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Petitioner, Stacey James-Cornelius, seeks review of the special master's February 4, 2019, decision (the "February 4, 2019, Decision") denying her claim for $17,111.12 in attorneys' fees and costs under Section 15(e) of the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa–15(e).  For the reasons set forth below, the Court:  (1) **DENIES**

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 15, 2019 (docket entry no. 31).  The parties were given an opportunity to advise the Court, by August 15, 2019, of their views with respect to what information, if any, should be redacted.  On August 12, 2019, the parties filed a joint status report informing the Court that no redactions were required (docket entry no. 33).  And so, the Court reissues the Memorandum Opinion and Order, dated August 12, 2019, without any redactions.

petitioner's motion for review of the special master's February 4, 2019, Decision and (2) **SUSTAINS** the decision of the special master.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

#### 1.     Case Overview

In this Vaccine Act matter, petitioner alleges that her minor child, E.J., suffered autonomic nervous system dysfunction as a result of receiving the three-part human papillomavirus ("HPV") vaccination series on October 30, 2014, December 23, 2014, and May 27, 2015.[2]  *See generally James-Cornelius v. Sec'y of Health & Human Servs.*, No. 17-1616V, 2019 WL 1039911 (Fed. Cl. Spec. Mstr. Feb. 4, 2019); Pet.  E.J.'s medical history is set forth in detail in the special master's February 4, 2019, Decision and is summarized here.  *See James-Cornelius*, 2019 WL 1039911, at *3–4.

#### 2.     E.J.'s Medical History

E.J. was born on February 10, 2000, and he was 14 years old when he received the first dose of the HPV vaccination on October 30, 2014.  Pet'r Ex. 1 at 1; Pet'r Ex. 3 at 1.  The next day, E.J. felt sick with cold-like symptoms, which were treated with over-the-counter medication.  Pet'r Ex. 1 at 1; Pet'r Ex. 2 at 1.  E.J. received the second dose of the HPV vaccination on December 23, 2014.  Pet'r Ex. 3 at 1.  The next day, a nurse practitioner at WMG Pediatrics diagnosed E.J. with sinusitis and a cough and prescribed him prednisone and amoxicillin-clavulanate.  Pet'r Ex. 10 at 10–11.

Approximately four months later, on April 23, 2015, Dr. Akpomudiare Otuguor, a physician at Peachtree Immediate Care, examined E.J. for a sustained fever, sore throat, and headaches.  Pet'r Ex. 6 at 1.  Dr. Otuguor diagnosed E.J. with acute pharyngitis and a fever and

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the petitioner's motion for attorneys' fees ("Pet'r Mot. for Att'y Fees"); the Secretary's response to petitioner's motion for attorneys' fees ("Resp't Resp. to Pet'r Mot. for Att'y Fees"); petitioner's exhibits ("Pet'r Ex."); and the special master's February 4, 2019, Decision ("February 4, 2019, Decision").  Except where otherwise noted, the facts recited herein are undisputed.

[2] The HPV vaccination is licensed as Gardasil in the United States.  Centers for Disease Control and Prevention, HPV Vaccine Safety and Effectiveness, http://www.cdc.gov/hpv/parents/vaccinesafety.html (last visited July 15, 2019).

2

he recommended Motrin and Tylenol.  *Id.*  E.J.'s sore throat and headaches persisted, and on April 27, 2015, E.J. returned to Peachtree Immediate Care and he was diagnosed with mononucleosis.  *Id.* at 6.

On April 29, 2015, Dr. Syed Baber, a physician at Peachtree Immediate Care, diagnosed E.J. with mononucleosis and a fever.  *Id.* at 10.  On May 2, 2015, Dr. Edd Thomas, also a physician at Peachtree Immediate Care, noted that E.J.'s mononucleosis was "[b]eginning [the] recovery phase" and that he could return to school.  *Id.* at 11–12.  But, Dr. Thomas stated that E.J. should refrain from aerobic and contact sports.  *Id.* at 12.

E.J. received the third dose of the HPV vaccination on May 27, 2015.  Pet'r Ex. 3 at 1.  On June 18, 2015, a nurse practitioner at WMG Pediatrics evaluated E.J. for a "new problem" consisting of abdominal pain, coughing, headaches, change in bowel habit, and a sore throat.  Pet'r Ex. 10 at 17.  The nurse practitioner diagnosed E.J. with bilateral thoracic back pain, pharyngitis, and a sore throat and recommended increasing fluids, a probiotic and ibuprofen.  *Id.* at 18–19.  The nurse practitioner also noted at that time that E.J. "[h]ad [mononucleosis] in May and is recovered."  *Id.* at 17.

On August 11, 2015, E.J. was evaluated at urgent care for a one-week history of "[i]ntermittent headaches, vomiting, diarrhea, back pain, muscle aches and lightheadedness."  Pet'r Ex. 7 at 4.  At that time, E.J. conveyed that these symptoms were "similar to mono[nucleosis]," but said that he did not have a sore throat or fever.  *Id.*  On September 7, 2015, E.J. went to the emergency room and informed doctors that he had "illnesses almost every week with fevers up to 100.2 [degrees]" since being diagnosed with mononucleosis.  *Id.* at 7.  The attending physician, Dr. Lonnie King, noted that E.J. had experienced fatigue and a decreased appetite since April 2015, "after getting mono[nucleosis] and getting [a] guardisil [sic] shot."  *Id.* at 7.  Dr. King also noted that E.J.'s symptoms could have been "a manifestation of a prolonged sequela from mononucleosis."  *Id.* at 9.  E.J.'s laboratory results were reassuring and he was discharged.  *Id.* at 10.

On January 11, 2016, Dr. Kyoung-Soon Kim at Stepping Stone Pediatrics LLC examined E.J. for a fever, back pain, leg pain, diarrhea, nausea and vomiting.  Pet'r Ex. 4 at 1–2.  Dr. Kim noted that E.J. said that he had become "'super sensitive to light'" and he had experienced episodes that "felt like his heart was skipping."  *Id.* at 1.  Dr. Kim also noted that petitioner

3

thought there was an "association" with the HPV vaccination and the "onset of [E.J.'s] chronic problems." *Id.* Magnetic resonance imagings ("MRIs") of E.J.'s brain and spine were normal. *Id.* at 8–9.

On January 22, 2016, Dr. Christopher Petit, a cardiologist, assessed E.J. for syncope, the temporary loss of consciousness or fainting. Pet'r Ex. 8 at 8–9. At that time, E.J. reported that his first episode of syncope was more than six months earlier and his most recent episode was within the past week. *Id.* at 8. Dr. Petit noted that the symptoms occurred during, or immediately after exercise, and the symptoms "all followed a prolonged bout of [m]ononucleosis which left [E.J.] with significant fatigue." *Id.* Dr. Petit's impression was "syncope, neurocardiogenic ('POTS')." *Id.* at 9.

On February 3, 2016, Dr. Gregory Melnikoff examined E.J. in the emergency room due to vomiting. Pet'r Ex. 9 at 81. E.J.'s medical history states that he had been suffering from fatigue, lower back pain, occasional syncope and intermittent vomiting for at least four months. *Id.* The medical history also states that his "[s]ymptoms initially started after being diagnosed with mono[nucleosis] and also receiving a guardisil [sic] immun[ization]." *Id.* Laboratory results were unremarkable and E.J. was discharged. *Id.* at 83–84.

On February 9, 2016, Dr. Peter Fischbach, a cardiologist, performed a tilt table test that yielded a normal response and diagnosed E.J. with "[n]eurocardiogenic syncope." *Id.* at 48. On April 18, 2016, Dr. Fischbach diagnosed E.J. with dysautonomia and worsening abdominal symptoms. Pet'r Ex. 8 at 1–2.

### 3.     Proceedings Before the Special Master

On October 27, 2017, petitioner filed a petition for compensation under the Vaccine Act. *See generally* Pet. This petition included an affidavit from petitioner which describes E.J.'s active lifestyle prior to October 2014; the three doses of the HPV vaccination that E.J. received; and E.J.'s medical examinations during the period of October 2014 to October 2017. *See generally* Pet'r Ex. 2. Petitioner also filed an affidavit from E.J. which describes the three doses of the HPV vaccination that E.J. received; E.J.'s subsequent symptoms; and the impact of E.J.'s alleged injuries on his academics, socialization and overall quality of life. *See generally* Pet'r Ex. 1. On November 2, 2017, and January 5, 2018, petitioner filed medical records. *See James-Cornelius*, 2019 WL 1039911, at *2.

4

On February 9, 2018, petitioner filed a motion for a decision dismissing the petition. *See generally* Pet'r Mot. In the motion, petitioner acknowledged that there were "missing records between October 30, 2014 and December 23, 2014," and petitioner stated that an investigation of the facts demonstrated that she would "likely be unable to prove that she [was] entitled to compensation in the Vaccine Program." *Id.* at 1–2. On February 9, 2018, the special master issued a decision dismissing the petition, concluding that the medical records were "insufficient to prove [p]etitioner's claim, and [p]etitioner ha[d] not filed a supportive opinion from an expert witness." *James-Cornelius v. Sec'y of Health & Human Servs.*, No. 17-1616V, 2018 WL 1559808, at *1 (Fed. Cl. Spec. Mstr. Feb. 9, 2018).

After the case was dismissed, petitioner filed a motion for attorneys' fees and costs, seeking $14,668.60 in fees and costs on February 28, 2018. *See generally* Pet'r Mot. for Att'y Fees. In the motion, petitioner argued that she acted in good faith in filing her petition and that the affidavits filed in the case, along with the medical records, were sufficient to establish a reasonable basis for her claim. *Id.* at 2–4. Petitioner also explained that she filed the petition without complete medical records "to preserve the statute of limitations." *Id.* at 3.

On April 12, 2018, the Secretary filed a response and opposition to petitioner's motion for attorneys' fees and costs. *See generally* Resp't Resp. to Pet'r Mot. for Att'y Fees. In the response, the Secretary argued that petitioner "failed to establish a reasonable basis for her claim," and so, petitioner is "legally precluded from receiving a discretionary award of attorneys' fees and costs." *Id.* at 6. The Secretary also argued that there was a lack of objective evidence supporting E.J.'s alleged injury and the contention that the doses of the HPV vaccine caused the symptoms that he experienced. *Id.* at 8–9.

On April 19, 2018, petitioner filed a reply in support of her application for attorneys' fees and costs. *See generally* Pet'r Reply. On April 26, 2018, petitioner filed a supplemental brief amending the amount of attorneys' fees and costs requested to $17,111.12. *See generally* Pet'r Supp. Br.

### 4. The Special Master's February 4, 2019, Decision

On February 4, 2019, the special master issued a decision denying an award of attorneys' fees and costs to petitioner. *See James-Cornelius*, 2019 WL 1039911, at *1. In the February 4, 2019, Decision, the special master found that petitioner was not eligible for the award of

5

attorneys' fees and costs, because there was not a reasonable basis for petitioner's Vaccine Act claim. *Id.* at *1, *7.

Specifically, the special master determined that, to be eligible for an award of attorneys' fees and costs, the petition must have been brought in good faith and with a reasonable basis for the claim. *James-Cornelius*, 2019 WL 1039911, at *4. Because there was no dispute that the petition was filed in good faith—and no evidence that the petition was brought in bad faith—the special master found that petitioner's claim met the good faith requirement. *Id.* at *4.

With regards to the issue of whether there was a reasonable basis for the petition, the special master determined that "the Federal Circuit has not interpreted 'reasonable basis' or provided any guidance as to how petitioners satisfy the reasonable basis standard." *Id.* (citing *Chuisano v. United States*, 116 Fed. Cl. 276, 285 (2014)). And so, the special master determined that deciding whether a claim has a reasonable basis was within her discretion. *Id.* (citing *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 582 (2016), *aff'd*, 875 F.3d 632 (Fed. Cir. 2017)). The special master also determined that "'the Vaccine Act requires that petitions be accompanied with evidence of injury or an explanation as to why records are not available.'" *Id.* (quoting *Simmons*, 128 Fed. Cl. at 583).

In assessing reasonable basis in this case, the special master determined that the Court must look to the "feasibility" of a claim "based on objective evidence." *Id.* (citing *Turner v. Sec'y of the Dep't of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007)). The special master also determined that petitioners must "'affirmatively demonstrate [a] reasonable basis'" through an objective evidentiary showing. *Id.* (quoting *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011)). And so, the special master concluded that such showing "'must, at a minimum, be supported by medical records or medical opinion.'" *Id.* (quoting *Everett*, 1992 WL 35863, at *2).

Applying this standard, the special master found that petitioner was not entitled to attorneys' fees and costs in this case, because petitioner did not demonstrate a reasonable basis for her claim. *Id.* at *5–7. In this regard, the special master determined that petitioner "did not provide objective evidence to establish the feasibility of her claim," because petitioner's medical records "could, at most, have established that the vaccinations preceded the onset of the injury." *Id.* at *5, *7. The special master also determined that the affidavits submitted by petitioner were

6

"not alone sufficient," because a petitioner's own statements are not objective evidence for purposes of evaluating reasonable basis in the Vaccine Program. *Id.* at *6; *see, e.g.*, *Chuisano*, 116 Fed. Cl. at 291. Finally, the special master determined that petitioner's explanation that she filed her petition with incomplete medical records due to an impending statute of limitations was neither supported by the record, nor "a legally recognized justification." *James-Cornelius*, 2019 WL 1039911, at *6. And so, the special master denied petitioner's application for attorneys' fees and costs. *Id.* at *1, *7.

Petitioner, alleging error, seeks review of the special master's decision.

### B. Procedural History

The procedural history for this matter is set forth in the special master's February 4, 2019, Decision. *See id.* at *1–3. Specifically relevant in this case, on March 6, 2019, petitioner filed a motion for review of the special master's February 4, 2019, Decision and a memorandum of objections. *See generally* Pet'r Mot. for Rev.; Pet'r Mem. On April 5, 2019, the Secretary filed a response and opposition to petitioner's motion for review. *See generally* Resp't Resp. to Pet'r Mot. for Rev. On April 29, 2019, petitioner filed a reply in support of her motion for review. *See generally* Pet'r. Reply to Resp't Resp.

The petitioner's motion for review having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Vaccine Act Claims

The United States Court of Federal Claims has jurisdiction to review the record of the proceedings before a special master and, upon such review, may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2).

The special master's determinations of law are reviewed *de novo*. *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009). The special master's findings of fact are reviewed for clear error. *Id.* (citation omitted); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) ("We uphold the special master's findings of fact unless they are arbitrary or capricious."). The special master's discretionary rulings are reviewed for abuse of discretion. *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

In this regard, this Court has held that the applicable standard of review in Vaccine Act cases challenging a special master's determination regarding reasonable attorneys' fees is abuse of discretion. *Scharfenberger v. Sec'y of Health & Human Servs.*, 124 Fed. Cl. 225, 231 (2015); *see also Dominguez v. Sec'y of Health & Human Servs.*, 136 Fed. Cl. 779, 782 (2018). The Court will find an abuse of discretion only where the special master's decision is: (1) clearly unreasonable, (2) based upon an erroneous conclusion of law, (3) based upon clearly erroneous fact findings, or (4) based upon a record without evidence to support the decision. *See Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012) (citing *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997)).

In addition, when disputing a special master's determination, this Court requires particular, factual demonstrations of error in the special master's conclusions. *See Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 639 (2012) ("[G]eneric statements cannot substitute for a factual showing of how the special master allegedly abused his discretion . . . .").

A special master's findings regarding the probative value of the evidence and the credibility of witnesses will not be disturbed, so long as they are "supported by substantial evidence." *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010) (citation omitted); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that the decision of whether to accord greater weight to contemporaneous medical records or later given testimony is "uniquely within the purview of the special master"). This "level of deference is especially apt in a case in which the medical evidence of causation is in dispute." *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993). And so, the Court will not substitute its judgment for that of the special master "if the special master

has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 579, 580 (1993).

**B.     Section 15(e)**

Section 15(e)(1) of the Vaccine Act governs the award of attorneys' fees and costs in Vaccine Act matters.[3]  42 U.S.C. § 300aa–15(e)(1).  When a special master awards compensation to a petitioner pursuant to section 15(e), the Vaccine Act directs the special master to award "reasonable attorneys' fees, and other costs, incurred in any proceeding on such petition." *Id.*  If the petitioner does not prevail on his or her claim—and is, thus, denied compensation—the special master "may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and that there was a reasonable basis for the claim for which the petition was brought." *Id.*; *see also Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013); *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).  And so, the Vaccine Act affords the special master discretion regarding whether to award attorneys' fees and costs when the special master denies compensation. *Saxton*, 3 F.3d at 1520.

Within the context of a petition brought under the Vaccine Act, "good faith" is a subjective standard, and this Court has held that the good faith standard focuses on whether the petitioner "honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of the Dep't of Health & Human Servs.*, No. 99-544V, 2007 WL 5180524, at *2 (Fed. Cl. Spec. Mstr.

---

[3] Section 15(e)(1) provides that:

> In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover–
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition.  If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa-15(e)(1).

Aug. 31, 2007) (citing *Di Roma v. Sec'y of the Dep't of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). With respect to determining whether "there was a reasonable basis for the claim," this Court has held that a petitioner must prove, by "something less than preponderant evidence," that he or she had a reasonable basis for filing the claim. *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). But, "[n]either the Federal Circuit nor this Court has had occasion to define the meaning of 'reasonable basis' for purposes of fee awards under the Vaccine Act." *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 153 (2012); *see also Chuisano*, 116 Fed. Cl. at 285 (holding that the reasonable basis standard is "amorphous" and "not rigidly defined").[4]

## IV.   LEGAL ANALYSIS

Petitioner raises three objections to the special master's February 4, 2019, Decision in her motion for review. *See generally* Pet'r Mem. First, petitioner argues that the special master abused her discretion by not weighing the entire factual basis of petitioner's claim in connection with the reasonable basis analysis. *Id.* at 4–7. Second, petitioner argues that the special master committed a legal error by conflating the reasonable basis and entitlement standards under the Vaccine Act. *Id.* at 9. Lastly, petitioner argues that the special master committed a legal error by referring to the conduct of counsel in the decision to deny petitioner's application for attorneys' fees and costs. *Id.* at 8; *see also Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). And so, petitioner requests that the Court set aside the special master's February 4, 2019, Decision and award petitioner $17,111.12 in attorneys' fees and costs.[5] *See* Pet'r Mot. for Rev. at 2.

The Secretary counters that the special master's February 4, 2019, Decision should be sustained, because "[p]etitioner has failed to demonstrate that the [s]pecial [m]aster erred, or that

---

[4] This Court has looked to the totality of the circumstances to determine whether a petitioner's claim had a reasonable basis at the time the petition was filed. *Simmons v. Sec'y of Health & Human Servs*, 128 Fed. Cl. 579, 583 (2016) (applying a totality of the circumstances test in reviewing reasonable basis of claim); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011) ("The presence of a reasonable basis is an objective consideration determined by the totality of the circumstances.") (citation omitted).

[5] In the alternative, petitioner requests that the Court remand this matter to the special master for further proceedings. *See* Pet'r Mot. for Rev. at 2.

her actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." See Resp't Resp. to Pet'r Mot. for Rev. at 1. In this regard, the Secretary argues that the special master properly exercised her discretion in reviewing the evidentiary record and determining that petitioner's claim lacks a reasonable basis. *Id.* at 10–13. The Secretary also argues that the special master did not conflate the entitlement and reasonable basis standards, nor erroneously consider counsel's conduct in this case. *Id.* at 13–15. And so, the Secretary requests that the Court sustain the special master's February 4, 2019, Decision. *Id.* at 1, 16.

For the reasons discussed below, the evidentiary record in this matter shows that the special master did not abuse her discretion, or act contrary to law, in reaching the decision to deny petitioner's application for attorneys' fees and costs. And so, the Court: (1) **DENIES** petitioner's motion for review of the special master's February 4, 2019, Decision and (2) **SUSTAINS** the decision of the special master.

### A.     The Special Master Did Not Abuse Her Discretion

As an initial matter, petitioner's first objection—that the special master abused her discretion by failing to weigh the entire factual basis of petitioner's claim in her reasonable basis analysis—is not supported by the record evidence. *See* Pet'r Mem. at 4–7. The Court reviews the special master's discretionary rulings for abuse of discretion. *See Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

Petitioner argues that the special master incorrectly determined that there was not a reasonable basis for her claim, because she has provided sufficient objective evidence to support a claim for compensation under the Vaccine Act. Pet'r Mem. at 4. To support this argument, petitioner points to evidence that she submitted during the proceedings before the special master to show that HPV caused E.J.'s injuries, including: (1) an affidavit from petitioner; (2) an affidavit from E.J.; (3) medical records documenting E.J.'s receipt of the three doses of the HPV vaccination; (4) E.J.'s diagnosis of autonomic dysfunction; (5) certain medical records dated August 11, 2015; August 28, 2015; September 7, 2015; January 11, 2016; January 15, 2016; January 22, 2016; January 29, 2016; February 3, 2016; February 5, 2016; and April 18, 2016; and (6) scholarly articles that associate the HPV vaccination with autonomic dysfunction. *See id.* at 4–7. Based upon this evidence, petitioner contends that she has met her burden to show that there was a reasonable basis for her claim. *Id.* at 4.

A careful review of the record evidence in this case makes clear, however, that the special master properly considered the factual basis for petitioner's Vaccine Act claim in determining that there was not a reasonable basis for the claim.

First, the evidentiary record shows that special master reasonably determined that petitioner "did not provide objective evidence to establish the feasibility of her claim." *James-Cornelius v. United States*, No. 17-1616V, 2019 WL 1039911, at *7 (Fed. Cl. Spec. Mstr. Feb. 4, 2019). In the February 4, 2019, Decision, the special master determined that petitioner's medical records "could, at most, have established that the vaccinations preceded the onset of the injury," which was not sufficient to warrant a reasonable basis finding in this case. *Id.* at *5. The evidentiary record in this case supports the special master's determination, because the medical record reveals that none of E.J.'s medical providers associated his symptoms with the doses of the HPV vaccination that E.J. received on October 30, 2014, December 23, 2014, and May 27, 2015. *Id.*; *see also* Pet'r Ex. 3 at 1. In fact, the medical record makes clear that E.J.'s treating physicians observed that his symptoms were likely due to mononucleosis, rather than to the HPV vaccine. *See, e.g.*, Pet'r Ex. 7 at 9 (stating that E.J.'s symptoms "may be a manifestation of a prolonged sequela from mononucleosis"); Ex. 8 at 8 ("[E.J.'s] symptoms have all followed a prolonged bout of [m]ononucleosis which left him with significant fatigue").

In addition, the few medical records in this case that mention the HPV vaccine either simply show that petitioner believed that the HPV vaccine contributed to E.J.'s injuries, or that the onset of E.J.'s symptoms occurred after he received the HPV vaccine.[6] *See* Resp't Resp. at 11 n.10; *see also Bekiaris v. Sec'y of Health & Human Servs*, 140 Fed. Cl. 108, 115 (2018) (holding that petitioner must "adduce medical evidence going to causation beyond temporal proximity"). As the special master correctly observed in the February 4, 2019, Decision, a finding of reasonable basis within the context of an application for attorneys' fees and costs "'requires presenting more than evidence showing only that the vaccine preceded the onset of injury for which petitioner seeks compensation.'" *James-Cornelius*, 2019 WL 1039911, at *5

---

[6] *See* Pet'r Ex. 4 at 1 ("Mom notes association with Gardasil vaccination for onset of chronic problems . . . after getting shot, [patient] 'got mono' 1 week later"); Pet'r Ex. 7 at 7 ("[S]ymptoms have all started at the end of April after getting mon[nucleosis] and getting guardisil [sic] shot"); Pet'r Ex. 9 at 81 ("Symptoms initially started after being diagnosed with mono[nucleosis] and also receiving a guardisil [sic] immun[ization]").

(quoting *Chuisano v. United States*, 116 Fed. Cl. 276, 287 (2014)). And so, again, the special master reasonably concluded that the medical record in this case did not support a finding that there was a reasonable basis for petitioner's claim.

The special master also reasonably concluded that, in the absence of medical records to support petitioner's claim, the affidavits submitted by petitioner were not sufficient to establish a reasonable basis. *Id.* at *6; *see, e.g.*, *Chuisano*, 116 Fed. Cl. at 291. Petitioner also improperly relies upon Section 11(c) of the Vaccine Act to argue that the affidavits that she submitted during the proceedings before the special master established that there was a reasonable basis for her claim, because Section 11(c) pertains to "petition content" rather than to the award of attorneys' fees and costs. *See* Pet'r Mem. at 4; *see also* 42 U.S.C. § 300aa–11(c).[7]

Because the record evidence in this case shows that the special master carefully considered the medical record and other evidence submitted in support of petitioner's claim—and that the special master properly exercised her discretion in determining that the medical record did not show that there was a reasonable basis for petitioner's claim—petitioner has not shown that the special master abused her discretion in denying her claim for attorneys' fees and costs.

### B. The Special Master Did Not Commit Legal Errors

Petitioner's remaining objections—that the special master committed legal errors by conflating the reasonable basis and entitlement standards under the Vaccine Act and by considering the conduct of counsel—are also not supported by the record evidence. *See* Pet'r Mem. at 8–9. The Court reviews the special master's determinations of law *de novo*. *See Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009).

First, petitioner's objection that the special master conflated the reasonable basis and entitlement standards under the Vaccine Act is belied by the February 4, 2019, Decision and the

---

[7] Section 300aa–11(c) provides in part that:

> A petition for compensation under the Program for a vaccine-related injury or death shall contain—
>
> (1) except as provided in paragraph (3), an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

42 U.S.C. § 300aa–11(c).

record evidence. Petitioner argues that the special master erred by placing too high of a burden upon petitioner and requiring petitioner to show that E.J.'s treating physicians linked the doses of the HPV vaccination to his injuries. *See* Pet'r Mem. at 9; *see also* Pet'r Mot. for Rev. at 2. But, petitioner's objection is contradicted by the evidentiary record.

In the February 4, 2019, Decision, the special master determined that "'the Vaccine Act requires that petitions be accompanied with evidence of injury or an explanation as to why records are not available.'" *James-Cornelius*, 2019 WL 1039911, at *5 (quoting *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 583 (2016), *aff'd*, 875 F.3d 632 (Fed. Cir. 2017)). And so, the special master also determined that petitioner must "'affirmatively demonstrate [a] reasonable basis,'" through an objective evidentiary showing and that such a showing "'must, at a minimum, be supported by medical records or medical opinion.'" *Id.* (quoting *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Everett v. Sec'y of the Dep't of Health & Human Servs.*, No 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992).

Based upon this standard, the special master concluded that petitioner "did not provide objective evidence to establish the feasibility of her claim," because the medical records could have, at most, established that the HPV vaccinations preceded the onset of E.J.'s injury and the affidavits submitted by petitioner were "not alone sufficient" to show a reasonable basis for petitioner's claim. *Id.* at *5–7; *see, e.g.*, *Chuisano*, 116 Fed. Cl. at 291 (holding that petitioner's own statements are not objective for purposes of evaluating reasonable basis). The special master's conclusion is consistent with the evidentiary record in this case and the applicable case law. *James-Cornelius*, 2019 WL 1039911, at *7; *McKellar*, 101 Fed. Cl. at 305; *Everett*, 1992 WL 35863, at *2; *Chuisano*, 116 Fed. Cl. at 291. Given this, the record evidence makes clear that the special master applied the proper legal standard for determining whether there was a reasonable basis for petitioner's Vaccine Act claim in this case. And so, the Court will not set aside the determination of the special master.

Petitioner's objection that the special master committed a legal error by "engag[ing] in an analysis forbidden by *Simmons*—namely, . . . [considering] the conduct of [c]ounsel" in

assessing reasonable basis, is also unsubstantiated. *See* Pet'r Mem. at 8; *see also Simmons*, 875 F.3d at 636.[8] In the February 4, 2019, Decision, the special master found that:

> Petitioner had not received all the medical records necessary to establish reasonable basis . . . This is evidenced by counsel's repeated attempts to collect additional records and discuss the [p]rogram's burden of proof prior to filing.

*James-Cornelius*, 2019 WL 1039911, at *5. Petitioner argues without persuasion that the special master committed legal error in making this determination.

A careful reading of the February 4, 2019, Decision makes clear that the special master did not consider the conduct of counsel in determining whether there was a reasonable basis for petitioner's claim, as petitioner suggests. *See id.* at *6 (citing *Simmons*, 875 F.3d at 636). Notably, the special master clearly states in the decision that counsel for petitioner's "performance of due diligence, [and] counsel's reliance on [p]etitioner's and E.J.'s affidavits . . . *have no bearing on whether there was an objective reasonable basis*" for petitioner to bring this case. *Id.* (emphasis supplied). Given this, the record evidence shows that special master did not err by considering the conduct of counsel in reaching her reasonable basis determination in this case.

## V. CONCLUSION

In sum, the record evidence in this case demonstrates that petitioner has not met her burden to show that the special master abused her discretion or erred as a matter of law in denying petitioner's application for attorneys' fees and costs. To the contrary, the record evidence demonstrates that the special master's decision was reasonable, supported by the evidence and in accordance with Section 15(e) of the Vaccine Act.

And so, for the foregoing reasons, the Court: (1) **DENIES** petitioner's motion for review of the special master's February 4, 2019 Decision and (2) **SUSTAINS** the decision of the special master.

The Clerk is directed to enter judgment accordingly.

---

[8] In *Simmons*, the Federal Circuit held that an attorney's conduct has no bearing on an evaluation of whether there is a reasonable basis for the claim set forth in the petition. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017).

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered privileged, confidential, or sensitive personally-identifiable information that should be protected from disclosure. And so, this Memorandum Opinion and Order shall be **FILED UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted prior to publication. The parties shall also **FILE**, by **August 15, 2019**, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

                                                  s/Lydia Kay Griggsby
                                                  LYDIA KAY GRIGGSBY
                                                  Judge